272 So.2d 355 (1973)
STATE of Louisiana
v.
John H. WASHINGTON.
No. 52150.
Supreme Court of Louisiana.
January 15, 1973.
*357 Dorsey & Marks, John L. Dorsey, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
John H. Washington was charged with aggravated rape. Upon his conviction for simple rape, he was sentenced to five years at hard labor. This appeal followed. Six bills of exceptions are relied upon to set aside the conviction and sentence.

Bill No. 1
Appellant filed a motion to quash the grand jury indictment because women were excluded by the jury commission from the venire and list from which the grand jury was selected. He argues that a jury without women is not representative of a cross section of the community. It is inferred, for that reason, the right to a jury trial as guaranteed by the United States Constitution is denied.
Louisiana's Constitution grants women an exemption from jury service in the absence of a written declaration of desire to serve. La.Const, art. 7 § 41. The principle is repeated in Article 402 of the Code of Criminal Procedure with respect to criminal trials and in Section 3055 of Title 13 of the Revised Statutes insofar as civil trials are concerned.
It is a constitutional and legislative policy established, obviously, to foster and encourage woman's role as mother and the mainstay of family life. The importance of the policy thus so firmly established is directly related to the vital role the family occupies in this Nation's society. If a conflict should be found to exist between the right of an accused to a jury on which women must serve and the constitutional and legislative policy designed to preserve the family as a vital element of our society, then our choice would be on the side of motherhood and preserving the family unit. And, since all constitutional rights are not absolute, the choice would only partially modify the right to trial by jury and at the same time uphold a historically sound practice in this State.
Furthermore, Louisiana does not exclude women from jury service. The State grants an exemption which may be set aside by a declaration of desire to serve. The fact that few women volunteer to serve, which the State concedes, does, to some extent, indicate the wisdom of the existing policy. The inference may be gained from this experience that, because of their role in the social structure, serving as jurors would unduly burden and deter women from fulfilling their objective. However, those who choose to serve are free to do so. Some do.
This Court has often upheld the State's constitutional and legislative exemption of women from jury service and it would seem unnecessary to repeat those principles again. State v. Pratt, 255 La. 919, 233 So.2d 883 (1970); State v. Comeaux, 252 La. 481, 211 So.2d 620 (1968); State v. Clifton, 247 La. 495, 172 So.2d 657 (1965); and State v. Dees, 252 La. 434, 211 So.2d 318 (1968). In these decisions reliance has been placed upon the rationale *358 of Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961), where the United States Supreme Court upheld the constitutionality of a Florida statute practically identical to the Louisiana statute. As the opinion points out, eighteen states accorded women an absolute exemption based solely on their sex, and three, including Louisiana, used an automatic exemption procedure. The Hoyt decision affirms the right of a state to establish an absolute exemption from jury service, so long as it is based upon some reasonable classification.
Appellant argues that the service of women on juries in rape trials is of particular importance because of the emotional and physical differences between men and women. As a result of these differences, it is said, only a woman understands what is involved in the consent to an act of sexual intercourse. It occurs to us that the logic of this argument is questionable where women are sought on a jury involving trial for a crime in which only women are victims. Nevertheless, the contention is met by recent expressions of the United States Supreme Court in Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972), where the accused, a man, moved to quash the indictment charging him with aggravated rape. One allegation set forth that women were systematically excluded from the grand jury. In declining to decide this question, the Court said:
Petitioner also challenges the Louisiana statutory exemption of women who do not volunteer for grand jury service. Article 402, La.Code of Crim.Proc. This claim is novel in this Court and, when urged by a male, finds no support in our past cases.

Bill No. 2
Appellant filed a supplemental application for a bill of particulars in which he sought the following information: (1) "Is it the State contention that the victim was of unsound mind at the time of the alleged rape and that defendant knew or should have known of her incapacity?" and (2) "Is it the State's contention that the defendant administered an intoxicating or narcotic agent to the victim and the victim was incapacitated by reason of a stupor or abnormal condition of the mind and defendant knew or should have known her condition?"
The State's attorney was of the opinion the accused was not entitled to the information and refused to respond to the questions. The trial judge agreed and did not require that the bill of particulars be furnished.
This indictment distinctly charges appellant with aggravated rape. By the supplemental application for bill of particulars information is sought which pertains solely to circumstances involved in the crime of simple rape, a lesser included offense. See La.Criminal Code art. 43. Although the State may in a proper case be compelled by bill of particulars to set up more specifically the nature and cause of the accusation in order to permit the defendant, in fairness, to more properly defend, it is not required that particulars be furnished with regard to lesser included offenses notwithstanding that verdicts of guilt to the lesser offense may be responsive to the more serious crime charged.
Obviously such a requirement would involve an endless inquiry into facts and circumstances which may have no bearing whatsoever upon the trial. When the trial judge denies a bill of particulars under these circumstances, in the exercise of a sound discretion, this Court will not disturb the ruling. State v. Square, 257 La. 743, 244 So.2d 200 (1971); State v. Pratt, 255 La. 919, 233 So.2d 883 (1970); State v. Hudson, 253 La. 992, 221 So.2d 484 (1969); State v. Bourg, 248 La. 844, 182 So.2d 510 (1966).

*359 Bill No. 9

Although this and other bills made no reference to those portions of the record relied upon to support them, we have been able to assemble this version of the facts from the record:
After the accused had testified and the defense had rested, the State informed the Court that it had no rebuttal. The trial was then recessed until the following morning when arguments were to be heard. When the trial was resumed the following day, and prior to argument, the State's attorney advised the court that, after court was recessed the previous day, new evidence came to the attention of the prosecution. Permission was accordingly requested to present the newly discovered evidence. In a conference between the judge and counsel, outside the presence of the jury, defense counsel was advised of the nature of the evidence proposed and the names of the parties involved. He nevertheless objected strenuously to reopening the State's case, and, when the objection was overruled, this bill of exceptions was reserved.
Thereafter the State called Jeffery Jerome Glover to the stand. He testified that during the previous night he informed members of the district attorney's staff that appellant John H. Washington raped his wife, Esma Glover, on the night of September 29, 1970. Harold J. Wheeler, an Assistant District Attorney, testified that Glover did contact him the night before and that he and Frank Klein went to the Glover home to interview Esma Glover.
Esma Glover then took the stand and described the circumstances surrounding her rape. After her testimony Washington took the stand and denied knowing Esma Glover. He testified further that on September 29, 1970, the date Esma Glover claimed he raped her, he and his brother, and their wives, were in Ben Harbor, Michigan. Roy Washington, his brother, corroborated appellant's alibi. And finally, Joseph Burgess, brother-in-law of the accused, testified that he often loaned John Washington his 1965 Pontiac, the car Washington said he used for the Michigan trip.
The general rule in the trial of criminal prosecutions requires that the State put its whole case in evidence in its presentation in chief. Only rebuttal testimony should be reserved to meet the evidence adduced by the defense. La.Code Crim.Proc. art. 765(5). But the rule is not to be inflexibly applied. The orderly administration of justice requires that the trial judge be vested with some discretion in such matters. Thus, the exception to the rule, permitting the exercise of a sound discretion by the trial judge, contemplates that newly discovered material testimony should not be excluded solely because it is offered after both the State and the defense have rested. Of course, if the State has deliberately withheld the evidence to deceive the defense and obtain an undue advantage, the evidence should not be allowed. Cf. State v. Johnson, 141 La. 775, 75 So. 678 (1917).
Considering the facts of this case we find no error in the ruling of the trial judge. The State learned of Esma Glover's rape during the night preceding argument; the accused was permitted an opportunity to rebut the newly discovered evidence, set up an alibi and call other witnesses to corroborate his rebuttal; and it was affirmatively shown that the State did not withhold the evidence to trick or deceive the defense and obtain an unfair advantage.
The bill is without merit.

Bill No. 10
This bill is related to the Bill No. 9 discussed above. It is grounded upon the contention that the State failed in its opening statement to disclose that it would introduce evidence of another rape to show system and intent. For this reason, it is *360 said, Esma Glover's testimony was not "fairly within the scope of the opening statement of the state" as required by Article 769 of the Code of Criminal Procedure; therefore, that evidence should not have been admitted.
This contention disregards the language of the second paragraph of Article 769 where it is recognized that "If the state offers evidence that was inadvertently and in good faith omitted from the opening statement, the court, in its discretion may admit the evidence if it finds that the defendant is not taken by surprise or prejudiced in the preparation of his defense."
As our discussion of Bill No. 9 makes clear, the failure to timely present evidence of Esma Glover's rape was an event entirely beyond the control of the State's attorney. It was not even a question of inadvertent omission, it was instead a case of not having knowledge of the new evidence until after the State had rested. As the record shows, the State could not refer to the rape of Esma Glover in its opening statement for it had no knowledge of this fact when the opening statement was made.
Evidence of Esma Glover's rape is also objected to because presenting evidence of crimes other than that charged is said to offend due process standards. The contention disregards a clear legislative authorization to the contrary:
"In order to show intent, evidence, is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction." La.R.S. 15:445.
"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged." La. R.S. 15:446.
Based upon this statutory authority we have repeatedly upheld the State's right to introduce evidence of other similar crimes. In sexual offenses, such as rape, evidence of similar recent acts of the accused is admissible for corroboration and to show the intent of the accused. State v. Crook, 253 La. 961, 221 So.2d 473 (1939). See also State v. Hills, 259 La. 436, 250 So.2d 394 (1971), and the numerous authorities cited there. Since our decision in State v. Hills, this proposition has been affirmed in another case involving a sexual offense. State v. Whitsell, 262 La. 165, 262 So.2d 509 (1972). The rule also finds acceptance in other jurisdictions. Clark v. State, 266 So.2d 687 (Fla.App. 1972); Gerlach v. State, 217 Ark. 102, 229 S.W.2d 37 (1950); Gunter v. State, 223 Ga. 290, 154 S.E.2d 608 (1967). As Wharton points out, the rule is considered particularly pertinent to sex crimes. 1 Wharton's Criminal Evidence § 250.

Bill No. 11
After both the State and the defense had rested, and before argument, when the State requested permission to present evidence to the jury of Esma Glover's rape, the defendant objected. The trial judge overruled the objection, whereupon defense counsel moved for a continuance or recess to gain time to prepare a defense to the new evidence. The continuance was denied and this bill was reserved.
A continuance is the postponement of a scheduled trial or hearing, and shall not be granted after the trial or hearing has commenced. A recess, on the other hand, is a temporary adjournment of a trial or hearing that occurs after a trial or hearing has commenced. La.Code Crim. *361 Proc. art. 708. Therefore, appellant can only complain of the denial of a recess.
Not only was the accused given an opportunity to present a defense to the additional evidence of the State, he did in fact do so. The alibi defense was supported by the testimony of the accused and two other witnesses. It was not improper for the trial judge to refuse to grant a recess under these circumstances.

Bill No. 12
This bill was reserved to the overruling of defendant's motion for a new trial. Aside from an allegation that the verdict is contrary to the law and the evidence, the motion is based upon the bills of exceptions relied upon in this appeal which we have found to be without merit. As we have often said, an allegation that the verdict is contrary to the law and the evidence presents nothing for review. See State v. Landry, 262 La. 32, 262 So.2d 360 (1972).
Although the proposition is not presented by a bill of exceptions, defense counsel argues in brief that there is no evidence in the record to show the condition or state of the victim's mind at the time of the rape; that he was convicted of simple rape; that Article 43 of the Criminal Code defines simple rape as a rape committed when the victim is in a stupor or abnormal condition of the mind or under the mistaken belief induced by artifice that the person committing the act is her husband; and that for this conviction of simple rape to stand, there must be some evidence of the state of the victim's mind.
Aside from the fact that this issue is not properly presented by a bill, the trial judge was of the opinion there was some evidence to support the conviction. In addition, the contention has recently been answered in State v. Cooley, 260 La. 768, 257 So.2d 400 (1972). There the accused was charged with murder and convicted of manslaughter. He contended that he was entitled to a new trial because there was no evidence in the record to show that the crime was committed in passion and heat of blood immediately caused by provocation sufficient to deprive an average person of self-control and cool reflection as Article 31 of the Criminal Code requires for manslaughter. In affirming the conviction we said that if there is sufficient evidence in the record to support a conviction for a greater offense (which includes the one for which the accused is convicted), the evidence will necessarily and automatically support a conviction of the lesser offense made responsive by legislative action.
For the reasons asisgned, the conviction and sentence are affirmed.
BARHAM, J., dissents and assigns reasons.
TATE, J., dissents and assigns written reasons.
DIXON, J., dissents.
TATE, Justice (dissenting).
I respectfully dissent.
The defendant was tried for the rape of Emily T. on May 16, 1971. Both State and defense presented their evidence on August 18th and 19th, 1971 and rested the latter evening. (Tr. 309: BY THE COURT: "The State has no rebuttal?" PROSECTOR: "No rebuttal".) After colloquy between Court and jury, it was decided not to present the case to the jury until the following morning. Tr. 309-314.
When the court recovened at 9 AM the following morning (August 20th), the State moved to reopen the case to present additional evidence of which it had just learned only the previous evening. Under this procedure, Article 765(5), unlike with the introduction of rebuttal evidence, the defense has the right to defend against the new evidence so introduced. I am unable *362 to say that the procedure so followed is unauthorized or improper.
However, in allowing such non-ordinary procedure, the trial court's discretion must weigh the prejudice the defendant or State will suffer as against the probative value of the new evidence proffered. Certainly, the defendant should not be deprived of an adequate opportunity to prepare a defense against this newly discovered evidence.
The new evidence consisted of the alleged rape of Esma G., a different lady, on September 29, 1970, some six months prior to the alleged rape for which the defendant was tried. This married lady testified she had a date with the defendant, because she was made at her husband, and that the defendant had taken her away in his car and raped her.
I prefer to rest my dissent primarily, not on the proposition that other crimes are not admissible to prove crimes such as rape where no special intent need be proven, but rather upon the trial court's denial to the defendant of a continuance of perhaps a day to investigate this witness's story and to prepare a defense to it.[1]
Here, for instance, this totally surprising and seriously prejudicial evidence was presented at 9 AM on the morning following the close of the case. Without continuance, the defendant produced the testimony of himself, his brother, and his brother-in-law that he was in Michigan, not New Orleans, the date of this allegedly corroborating rape. His counsel, tied up in court and immediately at bat, had no opportunity at all to investigate the complaining witness's story, her veracity (whether, for instance, she was in New Orleans on the day she claimed to be raped), the circumstances of her reporting or not reporting the alleged rape to the authorities at the time it occurred, etc.
I must say that the State's case in chief against the defendant was apparently weak. Although indicted for aggravated rape (a capital offense), he was convicted only of simple rape and sentenced to five years. The jury was out for six hours before returning even this verdict. The cumulative effect of this additional incident was undoubtedly significant in the jury's ultimate verdict of guilty to even the reduced charge.
It is simply unfair and not up to standards of fairness required of criminal trials to have denied the defendant a continuance to defend against this serious extraneous charge, belatedly raised after the case had closed (if indeed the trial court did not abuse its discretion by permitting reopening of the evidence to permit proof of this non-related offense).
I therefore respectfully dissent.
BARHAM, Justice (dissenting).
I dissent for the reasons assigned by Mr. Justice TATE and for further reasons as well.
NOTES
[1] I recognize the inconvenience to the trial jury and to court facilities caused by such a continuance, since in this capital case the trial jurors were sequestered. Nevertheless, this inconvenience must be weighed by the prosecution or defense before requesting a reopening of the case, and the trial court before exercising its discretion to grant this non-usual procedure. At all events, the fundamental fairness of an adequate time to present a defense cannot be denied because of such inconvenience.